IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| RONALD HOPE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.: 2:17-cv-129-MHT-GMB |
| | ) | [WO] |
| ALABAMA DEPARTMENT OF | ) | |
| TRANSPORTATION, | ) | |
| | ) | |
| Defendant. | ) | |

## **REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b)(1), this case was referred to the undersigned United States Magistrate Judge for review and submission of a report with recommended findings of fact and conclusions of law. Doc. 6. Plaintiff Ronald Hope filed this lawsuit on March 3, 2017, alleging discrimination on the basis of his race during the course of his employment with the Alabama Department of Transportation ("ALDOT"). Doc. 1. Now before the court is Defendant ALDOT's Motion to Dismiss. Doc. 14. After careful consideration of the parties' submissions, the applicable case law, and the record as a whole, the undersigned RECOMMENDS that the motion to dismiss (Doc. 14) be DENIED.

## **I. JURISDICTION AND VENUE**

The court has subject-matter jurisdiction over the claims in this action pursuant to 42 U.S.C. § 2000e-5(f)(3). The parties do not contest personal jurisdiction or venue, and the court finds adequate allegations to support both.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Ronald Hope is a 57-year-old resident of Montgomery, Alabama, and has been an employee of ALDOT for over 31 years. Doc. 13 at 2. He currently works as a Materials Engineer in the Southeast Region, Montgomery Area, at the level of Professional Civil Engineer II ("PCE II"). Doc. 13 at 2. As a PCE II, he is "responsible for the supervision and management" of the Southeast Region's materials section, which includes "pavement design, materials testing and the control of asphalt and concrete for 10 counties." Doc. 13 at 2.

Hope alleges that his supervisors at ALDOT engaged in a "pattern and practice of constant failure to provide Mid-Appraisals on time." Doc. 13 at 3. Mid-appraisals are mid-year performance evaluations designed to provide documented feedback on an employee's performance and suggest opportunities for improvement. *See* Doc. 13 at 3–4; Doc. 14-1 at 1; Doc. 16 at 2. According to Hope, the Alabama State Personnel Department's policy states: "Midway through the appraisal year, the supervisor should hold a Midappraisal Session with the employee to discuss performance levels. A discussion of strengths, development needs, and action plans are [sic] to be included."[1] Doc. 14-1 at 1. Hope's 2016 mid-appraisal was late, ultimately culminating in a pay-scale decrease on July 5, 2016—the same day he received both a mid-appraisal and annual appraisal demonstrating inadequate performance.[2] Doc. 14-1 at 1. Hope alleges that the late mid-appraisals

---

[1] In his Charge of Discrimination filed with the U.S. Equal Employment Opportunity Commission ("EEOC"), Hope states that he has quoted this passage from a "state of Alabama Personnel Department procedure/policy," but gives no other information and does not attach a copy of the policy.
[2] Hope also received his 2015 mid-appraisal late—just 14 days prior to his annual appraisal. Doc. 14-1 at 1.

negatively affected his salary by depriving him of the time necessary to "correct any deficiencies with work performance." Doc. 13 at 3. Hope, who is black, claims that white PCE II supervisors received their mid-appraisals on time. Doc. 13 at 2–3.

Hope also alleges that his annual appraisal scores were "systematically lowered" after he earned a professional engineering license in 2011. Doc. 13 at 4. His supervisors "resorted to extremely late Mid-Appraisals" because they "could not down grade [him] fast enough on the Annual Appraisals." Doc. 13 at 4. This "greatly diminished" his opportunity for a promotion to the position of Professional Civil Engineer II Senior, for which he should have been qualified. Doc. 13 at 4. "Moreover, [w]hite engineers received adjustments in salary after obtaining" their professional engineering licenses. Doc. 13 at 4.

Hope further claims that from October of 2013 to the date he filed this suit he was prevented from hiring, rehiring, or promoting any black employees, while white PCE II supervisors have been permitted to promote or hire "based on their recommendations or the results of their interview process." Doc. 13 at 3. According to Hope, ALDOT hired or promoted white employees in his section without his consent on three occasions: (1) "by forging [his] signature on a legal document at the request of [his supervisor] Mr. Graben"; (2) when he was "demanded" to promote a white employee "without a choice"; and (3) when a white employee "was promoted in my Section without [my] having any prior knowledge." Doc. 13 at 3–4.

Hope filed his EEOC charge on August 1, 2016. Doc. 14-1. The EEOC could not conclusively determine whether Hope's claim had merit, and it issued a "Dismissal and Notice of Rights," commonly known as a "right-to-sue letter," in December of 2016. Doc.

3

1-1. Hope then filed suit on March 3, 2017. Doc. 1. After ALDOT filed its first motion to dismiss on March 30, 2017, the court issued an order directing Hope to amend his complaint, and he filed an amended complaint on April 24, 2017. *See* Docs. 11, 12 & 13. ALDOT filed the instant motion to dismiss on May 9, 2017, and it is now ripe for disposition.

### III. STANDARD OF REVIEW

In considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is "plausible on its face" if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Factual allegations need not be detailed, but "must be enough to raise a right to relief above the speculative level," *id.*, and "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" will not suffice. *Iqbal*, 556 U.S. at 678.

In addition to the pleading requirements of *Twombly* and *Iqbal*, the court must consider a plaintiff's *pro se* status when evaluating the sufficiency of a complaint. "A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however

inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, this leniency cannot serve as a substitute for establishing a cause of action. *See Odion v. Google Inc.*, 628 F. App'x 635, 637 (11th Cir. 2015) (recognizing that although courts must show leniency to *pro se* litigants, "this leniency does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action") (internal quotation marks omitted).

## IV. DISCUSSION

Title VII of the Civil Rights Act of 1964 ("Title VII") prohibits employers from discriminating against an employee on the basis of his race. *See* 42 U.S.C. § 2000e-2(a)(1). To state a claim for race discrimination under Title VII, "a complaint need only provide enough factual matter (taken as true) to suggest intentional race discrimination." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245–46 (11th Cir. 2015) (citation and internal quotation marks omitted). It is well established that it is not necessary for a complaint to make out a "classic *McDonnell Douglas* prima facie case" of employment discrimination in order to state a viable Title VII claim. *Id.* at 1246 (citation and internal quotation marks omitted). A complaint that "plausibly suggest[s] that the plaintiff suffered an adverse employment action due to intentional racial discrimination" is sufficient. *See id.*

Based on Hope's factual allegations, the court construes his lawsuit as stating one claim for disparate treatment even though Hope describes three successive instances of

5

discrimination.³ *See, e.g., Nat'l R. R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (holding that "each discrete discriminatory act starts a new clock for filing charges alleging that act," before stating that acts not within the relevant time period can be employed "as background evidence in support of a timely claim"); *Fodor v. D'Isernia*, 506 F. App'x 965, 966 (11th Cir. 2013) (noting that courts should use "common sense" in interpreting *pro se* pleadings, and that such pleadings should be liberally construed) (citations omitted).

To establish a *prima facie* disparate treatment case, "a plaintiff must show (1) she belongs to a protected class; (2) she was qualified to do the job; (3) she was subjected to adverse employment action; and (4) her employer treated similarly situated employees outside her class more favorably." *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008). Though the plaintiff need not allege all of the elements of a *prima facie* case, "the elements are a helpful guide, and the crux . . . is that someone outside the class was treated more favorably than the plaintiff." *Davis v. Infinity Ins. Co.*, 2016 WL 4507122, at *12 (N.D. Ala. Aug. 29, 2016); *see McCurdy v. State of Ala. Disability Determination Serv.*, 2015 WL 5737103, at *6–7 (M.D. Ala. Sept. 30, 2015).

In its order denying ALDOT's first motion to dismiss, the court noted that Hope had "pleaded enough factual content to demonstrate that he may be able to state a

---

³ Admittedly, there is room for disagreement on whether Hope intended to bring three separate disparate treatment claims, as ALDOT has argued, *see generally* Doc. 14, or whether he has alleged one claim for disparate treatment with the three instances serving as factual support.  However, the Charge of Discrimination sheds some light on Hope's intent.  There, Hope complained primarily about the late mid-appraisals leading up to July 5, 2016, when he was "graded down to a one step raise." Doc. 14-1 at 1.  Hope characterized the information relating to ALDOT's alleged interference with his ability to hire and promote employees as "background information leading up to the two extremely late Mid-Appraisals." Doc. 14-1 at 1.

viable employment discrimination claim under Title VII." Doc. 12 at 3. However, his original complaint only presented "the mere possibility" of employment discrimination, and did not necessarily "suggest" intentional discrimination. *See Surtain*, 789 F.3d at 1246. The court noted that, to suggest intentional discrimination, Hope needed to allege facts to demonstrate that race "played [some] role in the disparate treatment." *Uppal v. Hosp. Corp. of Am.*, 482 F. App'x 394, 396 (11th Cir. 2012). Hope has certainly done so. He has alleged that his white supervisors engaged in a systematic practice of providing his mid-appraisals in an untimely fashion—or not at all—depriving him of the "necessary time . . . to correct any deficiencies with work performance." Doc. 13 at 3. According to Hope, white PCE II supervisors have received their mid-appraisals on time. Doc. 13 at 3. ALDOT argues that Hope's claim is not "actionable" because a late mid-appraisal is not an "adverse employment action," *see* Doc. 14 at 5, ignoring the fact that it is not necessary at the pleading stage for Hope to allege every element of a *prima facie* case. *See Surtain*, 789 F.3d at 1246 (citation and internal quotation marks omitted).

Even if Hope were required to state a *prima facie* case, his claim would still be viable. Hope has alleged that he is a qualified black employee who has been treated less favorably than similarly-situated white employees because he has received mid-appraisal evaluations late. This treatment allegedly culminated in a reduction in his pay scale on July 5, 2016, and has harmed his chances of a promotion.[4] And Hope has alleged additional

---

[4] To the extent Hope alleges that the lowering of his annual appraisal scores beginning in 2011 constitutes an adverse employment action, or multiple adverse employment actions, a discrete disparate treatment claim arising out of these occurrences would be untimely. *See* 42 U.S.C. § 2000e-5(e)(1) ("A charge [of discrimination] shall be filed within one hundred and eighty days after the alleged unlawful employment

7

facts which, if proven to be true, plausibly suggest discrimination on the basis of his race. *See, e.g.*, Doc. 13 at 3 ("Whites in my Section were either promoted or hired in many instances with only a mere recommendation. There were no qualified Blacks hired, rehired or promoted in the Materials Section of the S.E [sic] Montgomery Area (SERMA) from October 2013 to today's date."); Doc. 13 at 4 ("Moreover, White engineers received adjustments in salary after obtaining the P.E. License. I did not receive any adjustments or compensation [after receiving a professional engineering license.]").

Further, despite ALDOT's argument to the contrary, performance evaluations can constitute an adverse employment action where they may trigger a "more tangible form of adverse action such as a loss in benefits, ineligibility for promotional opportunities, or more formal discipline." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1241 (11th Cir. 2001). Hope has alleged that ALDOT's evaluation practices negatively affected his salary and his advancement opportunities, which is sufficient at the pleading stage to support a claim for disparate treatment. *See, e.g.*, *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003) ("[F]ormal criticism or poor performance evaluations are not necessarily adverse actions and they should not be considered such if they did not affect the employee's grade or salary.") (citation and internal quotation marks omitted); *Merriweather v. Ala. Dept. of Pub. Safety*, 17 F. Supp. 2d 1260, 1270–71 (M.D. Ala. 1998) (describing an action that affects an employee's salary or chances of promotion as an example of an adverse

---

practice occurred . . . ."). However, as noted earlier, these allegations may serve as factual support for Hope's timely disparate treatment claim.

employment action). The court therefore concludes that Hope has stated a viable claim for employment discrimination under Title VII.

## V. CONCLUSION

For the foregoing reasons, the undersigned Magistrate Judge RECOMMENDS that the motion to dismiss (Doc. 14) be DENIED. It is further ORDERED that the parties are DIRECTED to file any objections to the report and recommendation **not later than June 26, 2017**. Any objections filed must specifically identify the findings in the Magistrate Judge's report and recommendation to which the party is objecting. Frivolous, conclusive, or general objections will not be considered by the District Court. The parties are advised that this report and recommendation is not a final order of the court and, therefore, is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report and recommendation shall bar the party from a *de novo* determination by the District Court of issues covered in the report and recommendation and shall bar the party from attacking on appeal factual findings in the report and recommendation accepted or adopted by the District Court, except upon grounds of plain error or manifest injustice. *See Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982).

DONE this 12th day of June, 2017.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE