# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| RONALD HOPE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO.: 2:17-cv-129-GMB |
| ) | [WO] |
| ALABAMA DEPARTMENT OF ) | |
| TRANSPORTATION, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Ronald Hope filed this lawsuit on March 3, 2017, alleging discrimination on the basis of his race during the course of his employment with the Alabama Department of Transportation ("ALDOT"). Doc. 1. Now pending before the court is Defendant ALDOT's Motion for Summary Judgment. Doc. 28. After careful consideration of the parties' submissions, the applicable law, and the record as a whole, it is ORDERED that the Motion for Summary Judgment (Doc. 28) is GRANTED, and the claim asserted by Plaintiff Ronald Hope is DISMISSED with prejudice.

## I. JURISDICTION AND VENUE

The court has subject-matter jurisdiction over the claims in this action pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1331. The parties do not contest personal jurisdiction or venue, and the court finds adequate allegations to support both.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Ronald Hope is a 58-year-old black male and a resident of Montgomery, Alabama,

who has been employed at ALDOT since 1982. Docs. 13 at 2 & 29-1 at 2. He is currently employed as a materials engineer in the Southeast Region, Montgomery Area office, at the level of Professional Civil Engineer II ("PCE II"). Docs. 13 at 2 & 29-1 at 5–6. As a PCE II, Hope is "responsible for the supervision and management" of the Southeast Region's materials section, which includes "pavement design, materials testing and the control of asphalt and concrete for 10 counties." Doc. 13 at 2.

In 1998, Hope was promoted to the position of Transportation Administrator ("TA"). Doc. 29-1 at 3. In this position, Hope became the materials engineer "responsible for the administrative work in the planning, maintenance, and/or construction of highway facilities and other structures," which included "the production of asphalt, concrete and also geo-text styles." Docs. 29-1 at 4–6 & 29-4 at 2. Hope did not need a Professional Engineer ("PE") license for this position. Doc. 29-4 at 2. However, on December 15, 2011, Hope earned his PE license by passing an examination. Doc. 29-4 at 2. This enabled Hope to transfer laterally into the PCE II classification, which does require a PE license. Doc. 29-4 at 2. Prior to December 2015, the salary for TAs and PCE IIs was equivalent, so whenever TAs obtained their PE licenses, they were eligible to be classified as PCE IIs. Doc. 29-4 at 2 & 4–5. Hope was not eligible for an increase in pay with the transfer because of an Alabama State Personnel Board rule prohibiting salary increases for lateral transfers. Doc. 29-4 at 2 & 7.

According to ALDOT's records, Hope received a "mid-appraisal" on November 21,

2011; December 19, 2012; November 21, 2013; May 8, 2015; July 7, 2016;[1] and February 22, 2018. Doc. 45-2 at 2. Mid-appraisals are mid-year performance evaluations designed to provide documented feedback on an employee's performance and to suggest opportunities for improvement. *See* Docs. 13 at 3–4, 16 at 2 & 36-1. The evaluations should take place "[m]idway through the appraisal year" and involve a "discussion of strengths, development needs, and action plans." Doc. 36-1 at 1.

On July 5, 2016, Hope received both a mid-appraisal and annual appraisal (for the June 1, 2015 through June 1, 2016 time period) demonstrating inadequate performance. Doc. 14-1 at 1. Specifically, Hope received an overall performance score of 24.40, which fell within the "Meets Standards" range, but earned an unsatisfactory grade in the category of "Cooperation with Coworkers." Doc. 29-1 at 34. He also earned a 1 ("Partially Meets Standards") on a 0–4 scale for "communicates with individuals both orally and written" and "attends and participates in area meetings, etc." Doc. 29-1 at 35. The appraisal form indicated that no disciplinary actions were taken against Hope during this time period and included two additional "tasks" as part of a Performance Improvement Plan. Doc. 29-1 at 35–36. Hope received annual raises each year from 2014 to 2017, but was downgraded from a two-step raise to a one-step raise. Docs. 29-1 at 22 & 29-2 at 2–11.

In February 2017, Hope recommended to David Bohannon, his supervisor, that ALDOT hire Derek Lovett to fill an open Civil Engineer Graduate ("CEG") position in the

---

[1] According to Hope's charge of discrimination and ALDOT's evidentiary submission, Hope received this mid-appraisal on July 5, 2016. *See* Docs. 14-1 at 1 & 29-1 at 34. ALDOT does not provide an explanation for this discrepancy, but the distinction is not material to this analysis.

3

Montgomery Area office. Doc. 29-1 at 37. Bohannon is a PCE II, Senior with the authority to make final personnel decisions. Doc. 29-1 at 7–8. Though Hope has no ultimate authority to hire or promote employees, he has the ability to make personnel recommendations to Bohannon. Doc. 29-1 at 20. Hope admitted in his deposition that his authority to recommend—but not hire or promote—is no different from any other ALDOT employee in a PCE II position. Doc. 29-1 at 21. Bohannon did not hire Lovett because Lovett's name did not appear on the Certificate of Eligibles ("COE"), a list published by the State Personnel Department of all candidates eligible to be hired or promoted to a certain position. Doc. 29-1 at 26–27 & 37. In an email, Bohannon informed Hope that he could not select Lovett and directed Hope to "contact all candidates . . . for availability to interview for the Materials CEG vacancy." Doc. 29-1 at 37. Hope also had recommended Patricia Greene and Cedric Trawick for the position, neither of whom was ultimately chosen.[2] Doc. 29-1 at 10–12 & 25.

In the amended complaint, Hope alleges that he received his mid-appraisals late, which negatively affected his salary by depriving him of the time necessary to "correct any deficiencies with work performance." Doc. 13 at 3. Hope alleges that white PCE II coworkers received their mid-appraisals in a timely manner. Doc. 13 at 3. He also asserts that his annual appraisal scores have been "systematically lowered" since he obtained his

---

[2] There is no information in the record—aside from Hope's charge of discrimination—regarding Lovett, Green, or Trawick's race, nor the race of the individual Bohannon ultimately promoted. However, based on the nature of the factual allegations in Hope's charge of discrimination and amended complaint, the court assumes that Lovett, Green, and Trawick are black, while the individual chosen by Bohannon was white. *See* Doc. 13 at 3 ("Whites in my Section were either promoted or hired in many instances with only a mere recommendation. There were no qualified Blacks hired, rehired or promoted in the Materials Section of the S.E. Region Montgomery Area (SERMA) from October 2013 to today's date.").

PE license in 2011. Doc. 13 at 4. His supervisors "resorted to extremely late" mid-appraisals because they "could not down grade [sic] [Hope] fast enough on the Annual Appraisals." Doc. 13 at 4. This "greatly diminished" his opportunity for a promotion, even though he alleges that he qualified for a promotion to the position of PCE II, Senior. Doc. 13 at 4. "Moreover, [w]hite engineers received adjustments in salary after obtaining" their PE licenses. Doc. 13 at 4.

Hope further claims that from October 2013 to the date he filed suit he was prevented from hiring or promoting any black employees, while white PCE II coworkers had been permitted to promote or hire "based on their recommendations or the results of their interview process." Doc. 13 at 3. According to Hope, ALDOT hired or promoted white employees in his section without his consent on three occasions: (1) "by forging [his] signature on a legal document at the request of [his supervisor] Mr. Graben"; (2) when he was "demanded" to promote a white employee "without a choice"; and (3) when a white employee "was promoted in my Section without [Hope] having any prior knowledge." Doc. 13 at 3–4.

Hope filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on August 1, 2016. Doc. 14-1. The EEOC could not conclusively determine whether Hope's claim had merit, and it issued a right-to-sue letter in December 2016. Doc. 1-1. Hope then filed suit on March 3, 2017. Doc. 1. After Hope filed his amended complaint, ALDOT filed a motion to dismiss on May 9, 2017. Docs. 13 & 14. The court denied ALDOT's motion, and ALDOT subsequently moved for summary judgment. Docs. 17, 18 & 28.

In the wake of ALDOT's summary-judgment submission, Hope argued that he could not adequately respond to the motion because certain of ALDOT's discovery responses were inadequate. Docs. 31 & 32. The court held a hearing on this issue, after which it court ordered ALDOT to supplement its responses to two of Hope's interrogatories, and ordered both parties to supplement their briefing on the summary-judgment motion. Doc. 39. In response, Hope again asserted that ALDOT's interrogatory responses were inadequate. Doc. 41. ALDOT replied that, with the exception of an inadvertent omission,[3] it has complied with the court's order and responded satisfactorily to Hope's discovery requests. Doc. 45. To date, Hope has not responded substantively to the pending motion for summary judgment, and has instead devoted nearly all of his briefing to the assertion that ALDOT has fallen short of its discovery obligations.

### III. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The moving party "always bears the initial responsibility of informing the district

---

[3] ALDOT addressed the omission in its brief and attached a second amended discovery response to cure this deficiency. Docs. 45 at 4 & 45-2.

6

court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). In responding to a properly supported motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Indeed, the nonmovant must "go beyond the pleadings" and submit admissible evidence demonstrating "specific facts showing that there is a genuine [dispute] for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

When a district court considers a motion for summary judgment, it "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party, and must resolve all reasonable doubts about the facts in favor of the nonmovant." *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1274 (11th Cir. 2008) (citation and internal quotation marks omitted). The court's role is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1315 (11th Cir.

2007) (citation omitted). Importantly, if the nonmovant "fails to adduce evidence which would be sufficient . . . to support a jury finding for [the nonmovant], summary judgment may be granted." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1370 (11th Cir. 1997) (citation omitted).

## IV. DISCUSSION

**A.   ALDOT's Supplemental Discovery Responses**

As an initial matter, the court must determine whether ALDOT has complied with its order and adequately responded to all of Hope's discovery requests. On March 28, 2018, the court ordered ALDOT to (1) "identify all GREs, PCE Is, and PCE IIs who made lateral moves after obtaining a Professional Engineer License from January 2011 to present"; and (2) "list the date on which each PCE II or TA mid-year appraisal occurred in the Southeast Region from January 2011 to present, grouped by the relevant employee." Doc. 39 at 1.

ALDOT has done so. In its first amended discovery response, ALDOT listed two names in response to Hope's fifth interrogatory: Ronald Hope and Carol G. Hall. Doc. 45-1 at 1. Hope had laterally transferred from the position of TA to PCE II in January 2012, and Hall had transferred from the position of Transportation Manager to PCE I in April 2014. Doc. 45-1 at 1. In response to Hope's seventh interrogatory, ALDOT provided the names and corresponding mid-appraisal dates for all PCE IIs and TAs in the Southeast Region since January 2011. Doc. 45-1 at 2–4. After Hope asserted that ALDOT omitted two people from its response to his seventh interrogatory, ALDOT supplemented its

response for a second time by including Christopher Hunter and James Adams.[4] Doc. 45-2 at 3–4. Thus, ALDOT has demonstrated its compliance with the court's order by adequately responding to Hope's fifth and seventh interrogatories. Having resolved all outstanding discovery issues, the court may now turn to the merits of ALDOT's motion for summary judgment.

**B.      Title VII Claim**

Though he vigorously protested the sufficiency of ALDOT's discovery responses, Hope has yet to file a substantive response to ALDOT's summary-judgment motion despite twice having been ordered to do so. Docs. 30 & 39. As a result, ALDOT's factual assertions are largely uncontroverted. However, the court "cannot base the entry of summary judgment on the mere fact that the motion was unopposed." *United States v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004). Instead, it "must consider the merits of the motion." *Id.* While this does not require a "*sua sponte* review of all of the evidentiary materials on file," the court must, at a minimum, "review all of the evidentiary materials submitted in support of the motion for summary judgment." *Id.* at 1101–02. Accordingly, and particularly in light of Hope's *pro se* status, the court has evaluated the merits of the motion and examined Hope's submissions for any substantive discussion buried in his discovery arguments.

ALDOT argues that Hope has not established a *prima facie* case of employment discrimination and that, even if he had, his claim fails because ALDOT has articulated a

---

[4] In its brief, ALDOT mistakenly refers to this as "Interrogatory Number 5." Doc. 45 at 4.

legitimate reason for its employment actions. Title VII of the Civil Rights Act of 1964 ("Title VII") prohibits employers from discriminating against employees on the basis of their race. *See* 42 U.S.C. § 2000e-2(a)(1). Where, as here, the plaintiff asserts circumstantial and not direct evidence of discrimination, the court applies the framework first established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). That is, the plaintiff must first establish a *prima facie* case of employment discrimination, creating a presumption that the employer discriminated against him. *Flowers v. Troup Cnty. Sch. Dist.*, 803 F.3d 1327, 1336 (11th Cir. 2015). To establish a *prima facie* employment discrimination case, "a plaintiff must show (1) [he] belongs to a protected class; (2) [he] was qualified to do the job; (3) [he] was subjected to adverse employment action; and (4) [his] employer treated similarly situated employees outside [his] class more favorably." *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008).

If the plaintiff establishes a *prima facie* case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment action. *Flowers*, 803 F.3d at 1336. If the employer meets this burden, the plaintiff must then demonstrate by competent evidence that the employer's proffered reason is merely a pretext for discrimination in the course of his employment. *Id.* The "ultimate burden of persuading the court that [he] has been the victim of intentional discrimination" remains with the plaintiff. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

Here, the court does not reach the *McDonnell Douglas* burden-shifting analysis because Hope has not established a *prima facie* case. Hope alleges disparate treatment based on three discrete theories: (1) late mid-appraisals, (2) inability to promote or hire

10

black employees, and (3) ALDOT's failure to promote Hope or increase his salary after earning his PE license in 2011. In a prior Report and Recommendation, the court concluded that Hope brought just one Title VII employment discrimination claim based on disparate treatment with the three examples of allegedly discriminatory treatment serving as factual support. Doc. 17; *see Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (finding that acts that occurred prior to the onset of Title VII's statute of limitations in any given case can still serve as "background evidence in support of a timely claim"). Accordingly, the court will determine whether any evidence in the records supports one of Hope's three theories and creates a dispute of a material fact.

Even assuming that Hope has proven he is a member of a suspect class, was qualified for his job, and was subject to an adverse employment action, Hope's path to a successful *prima facie* case fails at the third element because he has not identified any similarly situated employees of a different race who were treated differently. While Hope alleged that similarly situated white employees were treated differently by (1) receiving timely mid-appraisals, (2) being granted the authority to hire or promote employees, and (3) receiving pay increases after earning their PE licenses, he has produced no evidence to support any of these contentions.

In fact, Hope admits as much in his deposition. For example, when asked if he had any proof or evidence that white PCE IIs were given timely mid-appraisals, Hope replied "No, I don't have any evidence." Doc. 29-1 at 15. He also was unable to provide any names of white PCE IIs who received timely mid-appraisals. Doc. 29-1 at 15–16. Next, when asked about his authority to hire or promote employees, Hope replied that he has

only the authority to make personnel recommendations to his superiors. Doc. 29-1 at 20–21. When asked if he had the same authority to make hiring recommendations as any white PCE II, Hope replied "I think so." Doc. 29-1 at 21. Finally, Hope has submitted no evidence that other similarly situated employees received raises after earning PE licenses. When asked in his deposition about his salary after earning the license and subsequent classification of PCE II, Hope explained that he "just feel[s] like [he] should have received an increase in salary," but that this feeling is not based on "some sort of rule or policy." Doc. 29-1 at 23. Hope admitted that he received yearly increases in salary based on merit. Doc. 29-1 at 23. This lack of evidence of disparate treatment is fatal to Hope's Title VII claim, as he is required at the summary-judgment stage to "set forth by affidavit or other evidence specific facts" instead of relying on "mere allegations" from his complaint. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Indeed, "unsupported speculation does not meet a party's burden of producing some defense to a summary judgment motion." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (internal quotation marks omitted).

Even in the absence of a *prima facie* employment discrimination case, however, a plaintiff survives summary judgment "if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). "A triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Id.* (internal quotation marks omitted). Thus, even where a plaintiff fails

to present evidence of a comparator or otherwise establish a *prima facie* case, "so long as the circumstantial evidence raises a reasonable inference that the employer discriminated against the plaintiff, summary judgment is improper." *Id.*; *see also Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010) (noting that the *McDonnell-Douglas* circumstantial evidence standard is "flexible and depend[s] on the particular situation"); *Rioux*, 520 F.3d at 1281 (finding the plaintiff satisfied his burden "with respect to pretext" despite being unable to establish a comparator).

Hope has not presented a convincing mosaic of circumstantial evidence. The evidence of record, even viewed in the light most favorable to Hope, does not give rise to any inference that ALDOT discriminated against Hope on the basis of his race. The evidence establishes that Hope's mid-appraisal dates have not been significantly different from those of his PCE II coworkers, and that there is no ALDOT policy mandating that mid-appraisals be issued by a certain date. Moreover, due to his position, Hope had only the ability to make recommendations on personnel matters, and did not have any decision-making authority or ability to hire, fire, or promote. As Hope admitted in his deposition, there is no evidence that any PCE II of another other race had any more authority over personnel matters than did Hope. And there is no evidence in the record that any other ALDOT employee received a salary increase after earning a PE license and being reclassified from a TA to a PCE II. On the other hand, ALDOT established that the pay scales for both positions are identical and that it is prohibited by State Personnel Department regulations from approving a salary increase for such a lateral transfer. Finally, it is undisputed that ALDOT has increased Hope's salary on a yearly basis since

2014.

Thus, the only suggestion of discrimination comes not in the form of any evidence in the record, but rather through Hope's own speculation and conjecture. And Hope's submissions do little, if anything, to account for these shortcomings. Hope initially argued that he could not identify any comparators because of ALDOT's insufficient response to his interrogatories. But ALDOT cured this shortcoming and Hope still was unable to identify an appropriate comparator. *See* Docs. 41, 42 & 45. Hope reasserted the argument from his amended complaint that ALDOT's late mid-appraisals deprived him of the ability to correct the deficiencies in his work performance and thus negatively impacted his salary, but was unable to point to any similarly situated coworker who was treated more favorably. *See* Doc. 31 at 2. ALDOT's promotion of white employees in Hope's section while declining his recommendation for certain black employees, which Hope claims to be the "greatest form of direct and indirect discrimination" in his case, is insufficient by itself to create an inference that Hope was discriminated against. Doc. 31 at 3.

Hope astutely acknowledged in briefing that "knowing and proving are two different entities." Doc. 41 at 5. While Hope has expressed his strong belief that he has been discriminated against on the basis of his race during his employment at ALDOT, his failure to provide any evidence that raises even a slight inference of intentional discrimination is fatal to his Title VII claim. "[A] *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine issue of material fact on a necessary element of his claim." *Johnson v. Deloach*, 692 F. Supp. 2d 1316, 1323 (M.D. Ala. 2010). Accordingly, summary judgment is due to be entered in favor of ALDOT.

## V. CONCLUSION

For the foregoing reasons, it is ORDERED that the motion for summary judgment (Doc. 28) is GRANTED, and all claims asserted by Plaintiff Ronald Hope are DISMISSED with prejudice. A final judgment will issue separately.

DONE this 11th day of July, 2018.

/s/ Gray M. Borden
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE